## OPEN HEARTH STEEL FURNACE CO. v. BLAW–KNOX CO. et al.

(Circuit Court of Appeals, Third Circuit. October 3, 1924.)

No. 3094.

Patents ⊕═328—1,220,444, for improved water cooler in basic open hearth furnace, held invalid and not infringed, in view of prior art.

Naismith patent, No. 1,220,444, claims 1, 2, 5, 8, for water coolers in open hearth furnaces used for metallurgical purposes, *held* void and not infringed, in view of prior patents and uses.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr and Robert M. Gibson, Judges.

Suit by the Open Hearth Steel Furnace Company against the Blaw-Knox Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Clarence J. Loftus, of Chicago, Ill., for appellant.

Bakewell, Byrnes & Stebbins, of Pittsburgh, Pa. (George E. Stebbins and C. P. Byrnes, both of Pittsburgh, Pa., of counsel), for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

BODINE, District Judge. The case involves United States letters patent No. 1,220,444, issued to Samuel Naismith, of Chicago. The following excerpts from the specification disclose the invention (the italics are mine):

"My invention relates more particularly to basic open hearth and reheating furnaces used for metallurgical purposes, and has for its object a new and useful improvement for the preservation of the slag line and means for supporting the furnace walls adjacent thereto. It is a further object of my invention to provide an improved means to prevent the basic and acid linings of the furnace from fluxing or uniting.

"At the joint where the hearth joins the remainder of the furnace there is placed between the two materials, to retard their fluxing, a neutral joint of passive material, usually chromite. That part of the furnace at and near the neutral joint is known as the slag line.

"I place a water cooler or series of water coolers in the wall of the furnace at the slag line, adjacent to the banks of basic material, as a result of which the walls and basic material at or near this point are kept cool and in such condition as to withstand the pernicious attack and wash of the slag, and the walls from being eaten out or undermined.

"*In the present constructions, there is utilized a neutral joint at the slag line of chromite or other passive material*, between the silica brick walls, the basic banks and walls of the hearth, but this method is unsatisfactory and expensive. *With my invention the chromite joint is eliminated entirely, as the water cooler serves as a joint in place of the chromite*, and keeps the basic and acid materials cool, and prevents any fluxing or the melting of the silica brick, and the acid from the brick running down into the basic material.

"In the construction disclosed in the accompanying drawings, *the weight of the silica walls and roof are carried on buck stays*, the roof channel being suspended from the top of the buck stays, and the side walls being supported by an angle iron which is securely bolted to the buck stays immediately above the water coolers. This construction relieves the basic bottom or hearth of all weight and by placing the water coolers immediately below and adjacent to the supporting means of the wall and above the walls of the hearth the two materials are prevented from disintegration, and the supporting means for the silica walls kept cool and protected.

"*The water coolers are readily detachable*, so that in the event any of them should happen to give way they can be readily and quickly removed and replaced without the necessity of shutting off the gas or allowing the heated steel to become chilled."

The claims in suit are 1, 2, 5, and 8, as follows:

"1. In a basic open hearth furnace, *a cooler positioned to serve as a neutral joint* between the acid brick and basic lining to prevent fluxing.

"2. In a furnace of the class described, a series of *readily removable water coolers positioned* in the walls of the furnace at `the slag line* and *near the lining* thereof, and means for producing a circulation of water through said coolers."

"5. In a basic open hearth furnace, *a cooler at the slag line and adjacent* to the banks for the purpose set forth."

"8. In the combination of a furnace provided with basic and acid linings and *water cooler positioned between said linings to prevent their fluxing*."

The court below held that the claims should never have been allowed, and would not have been allowed, had the Patent Office embraced within its files knowledge of what was going on in the different steel plants of the country.

A case involving the same questions was tried in the Northern District of Ohio. Open Hearth Steel Company v. Youngstown Sheet & Tube Company, 2 F. (2d) 94. In that case Judge Westenhaver decided that the prior art limited the patent to the precise disclosure of the drawings.

The questions raised upon this appeal are: First, noninfringement; secondly, invalidity, both in view of the prior patents and prior uses, and also on the ground of noninvention.

The alleged infringing coolers manufactured by defendant were installed in the Edgar Thompson Works of the Carnegie Steel Company, Braddock, Pa. These coolers, consisting of a water jacket, were built into the brick wall of the furnaces. They were at first installed some 5 inches above the slag line, and later raised to 7½ inches

above the slag line. The coolers do not form a separating joint between the silica and magnesite brick at the lining face of the wall which is exposed to the heat of the furnace. The cooler called for by the patent covers a space between the upper edge of the walls of the hearth and the lower edge of the side walls. Such a cooler covers the slag zone, whereas the defendant's is above the slag zone. The defendant places its coolers on the outside walls. The patent calls for coolers set in toward the interior of the furnace, so as to be adjacent to the lining or banks of the furnace. In the defendant's construction the upper walls rest upon the coolers. The construction of the patent calls for the support of the upper walls by buck stays.

To further discuss the differences between the patent in suit and the defendant's structure would not prove helpful. The prior art patents show that it was old to use water coolers set into brick work. Possibly the nearest is the Knox patent, 919,027, where the invention is described as follows:

"In accordance with my invention, I build into the brick work of the furnace at the parts thereto which are to be protected by the water cooling a plurality of hollow water cooling boxes or castings. These boxes may be arranged in various ways, according to the particular nature and construction of the furnace."

It is contended that these devices of Knox were nothing but small affairs, having a negligible cooling effect, and designed merely for protecting the brickwork above the hearth against the hot gases; that the heart of the Naismith invention was in preventing the fluxing of the silica and the magnesite and the undermining of the silica wall at the slag line. Judge Orr held that there was no invention upon the part of Naismith in limiting the broad disclosure of Knox and expressing such limitation with a degree of particularity. In that we agree.

Both Judge Orr and Judge Westenhaver found that the prior uses of coolers made by Knox in the Keystone Bronze Company, the predecessor in business of the defendant, were substantial, and not merely abandoned experiments. Knox installed water coolers in the Pennsylvania Steel Company, the Maryland Steel Company, and the Harrisburg Pipe & Pipe Bending Company's plant.

The defendant's device does not infringe the plaintiff's patent, which is limited by the precise language of the claims in suit.

The judgment below will be affirmed.